Jake A. KENDER, Plaintiff-Respondent,

v.

AUTO-OWNERS INSURANCE COMPANY,
Defendant-Appellant,†

Matt E. LUCEY, Enterprise Rent A Car Company,
Inc., Empire Fire and Marine Insurance
Company, United Healthcare of Wisconsin, Inc.
and American Family Mutual Insurance
Company, Defendants-Respondents.

Court of Appeals

*No. 2009AP483. Oral argument June 23, 2010.
—Decided August 10, 2010.*

2010 WI App 121

(Also reported in 793 N.W.2d 88.)

† Petition for Review denied 10-27-10.

378

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Auto-Owners Insurance Company (Auto-Owners) appeals from the order granting Enterprise Rent-A-Car Company, Inc. and Empire Fire & Marine Insurance Company's (unless otherwise specified, collectively referred to as Enterprise) motion for declaratory judgment, whereby the trial court declared that the Auto-Owners insurance policy issued to Strom Engineering Corporation (Strom) affords coverage to Matt Lucey. Auto-Owners argues that the trial court erred when it applied Minnesota's law of permissive vehicle use. Auto-Owners further asserts that the trial court erred when it denied Auto-Owners' motion for bifurcation, stay, and a separate trial on the issues of permissive use and insurance coverage. Because we agree with the trial court's conclusion that Minnesota's "initial permission" rule applies and obligates Auto-Owners to provide coverage to Lucey, there was no need for bifurcation, stay, and a separate trial on the issues of permissive use and insurance coverage. Accordingly, we affirm.

## I. BACKGROUND.[1]

¶ 2. This lawsuit arises out of a motor vehicle accident that occurred in the early morning hours of March 13, 2005, in Oak Creek, Wisconsin and involved vehicles operated by Lucey and Jake Kender. At the time of the accident, Lucey was driving a vehicle that Strom, his employer, had rented from Enterprise, which was insured by Empire Fire & Marine Insurance Company. Lucey was in Wisconsin to work with Strom's client CNH at the CNH factory in Racine, Wisconsin. Lucey testified during his deposition that prior to the accident, he and a co-worker had spent time at a club discussing employment over drinks. At the time of his deposition, Lucey was unable to recall where he was going or what time he left the club prior to the accident.

¶ 3. Strom is a Minnesota company, and at the time of the accident, it had motor vehicle insurance coverage through Auto-Owners. The "Minnesota Amendatory Endorsement" to the Auto-Owners policy issued to Strom provides, in relevant part:

> It is agreed:
>
> 1. **SECTION II – LIABILITY COVERAGE** is amended as follows:
>
> . . . .
>
> a. **Liability Coverage – Bodily Injury and Property Damage**
>
> **We** will pay damages for **bodily injury** and **property damage** for which **you** become legally responsible because of or arising out of the ownership, maintenance or use of **your auto-**

---

[1] To the extent there is a dispute as to the factual circumstances leading up to the accident, the dispute is not material for purposes of this appeal. We have tried to reference only those facts that the parties appear to agree on.

**mobile** ... as an **automobile. We** will pay such damages:

. . . .

**(3)** on behalf of any person using **your automobile** (that is not a **trailer**) *with your permission* or that of a **relative** . . . .[2]

(Italics added.)

¶ 4. Strom moved for summary judgment on the basis that Lucey was not acting within the scope of his employment at the time of the accident. The trial court granted the motion and dismissed all claims against Strom.[3] At the same time, Auto-Owners moved for bifurcation and stay and for a coverage trial on the permissive use issue based on a factual dispute as to whether Lucey was operating the vehicle with Strom's permission at the time of the accident. Enterprise filed a motion for declaratory judgment seeking a ruling that Minnesota law on the permissive use issue applied.

¶ 5. The trial court denied Auto-Owners' motion and granted Enterprise's motion for a declaratory judgment after it determined that Minnesota's initial permission rule was applicable. Consequently, the court held that Lucey was entitled to insurance coverage under the Auto-Owners policy. Auto-Owners filed a petition for interlocutory appeal, which we granted.

## II. ANALYSIS.

¶ 6. Auto-Owners argues that the trial court's decision is in error because: (1) even if Minnesota law applies to the permissive use question, Minnesota law is

[2] The policy defines "Your automobile" as the automobile listed on the declarations page, which includes "Hired Automobiles."

[3] The dismissal of Strom is not at issue.

clear and unambiguous that it does not apply outside of Minnesota's borders; and (2) there is no basis to apply Minnesota law because this is not a contract interpretation question requiring the determination of policy rights. Instead, because this case involves a Wisconsin motor vehicle accident, Auto-Owners asserts that choice-of-law analysis dictates that Wisconsin law should apply to the facts surrounding the accident, namely, the extent of Lucey's permission to use the vehicle. We disagree with both of these contentions.

¶ 7. When it comes to permissive use, Wisconsin applies the mere deviation rule, which allows insurance coverage only where the deviation from the scope of permission was minor, when determining the scope of permission under an automobile liability policy. *See Employers Ins. of Wausau v. Pelczynski*, 153 Wis. 2d 303, 308, 451 N.W.2d 300 (Ct. App. 1989). In contrast, Minnesota adheres to the initial permission rule, "which provides that when a named insured initially gives another permission to use a vehicle, subsequent use, short of conversion or theft of the vehicle, remains permissive even though the use is outside the initial grant of permission." *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 582 (Minn. 2003). Thus, the determination of whether Minnesota or Wisconsin law applies to the permissive use issue is pivotal to the outcome of this case. As Auto-Owners points out, if Minnesota's initial permission rule applies, then Lucey is a permissive user under Strom's policy with Auto-Owners; however, if Wisconsin law applies, whether Lucey was driving with Strom's permission at the time of the accident is a question to be resolved by the jury.

## A. *Minnesota's initial permission rule.*

¶ 8. At the outset, we address Auto-Owners' assertion that the trial court's application of Minnesota law was in error because Minnesota's permissive use law comes from a Minnesota statute which cannot be applied outside of state lines. To support its argument, Auto-Owners relies on the language of MINN. STAT. § 170.54:

**Driver deemed agent of owner.** Whenever any motor vehicle shall be operated *within this state,* by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

(Italics added.)[4]

██

¶ 9. Auto-Owners' reliance on the statute is misplaced. Liability under the statute is not at issue; what is at issue is whether the Auto-Owners policy issued to Strom provides coverage to Lucey. An owner's liability under the statute is separate and distinct from an insurer's liability based on policy language. *See, e.g., Safeco Ins. Cos. v. Diaz,* 385 N.W.2d 845, 847 (Minn. Ct. App. 1986) (identifying two types of potential liability in a permissive use case: vicarious liability under MINN. STAT. § 170.54 and liability under an insurance policy), *overruled in part on other grounds by Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246 (Minn. 1998).[5]

---

[4] MINNESOTA STAT. § 170.54 has since been renumbered MINN. STAT. § 169.09(5a). As Auto-Owners points out, the cases relevant to this appeal were issued prior to § 170.54's renumbering. Therefore, to avoid confusion, we refer to the statute as § 170.54.

[5] We are aware of the recent decision in *Blum v. 1st Auto & Casualty Insurance Co.,* 2010 WI 78, 326 Wis. 2d 729, 786 N.W.2d

¶ 10. Auto-Owners contends that "it is obvious that the initial permission rule and MINN. STAT. § 170.54 are one and the same, and are entirely inseparable." Based on our review of the relevant case law, we are not convinced. Instead, our reading of these cases comports with Enterprise's assessment that "[t]he 'initial permission' rule is a court made canon that has been adopted by Minnesota courts and applied to interpret *both* the statutorily imposed owner liability *and* the contractual liability of an insurer." (Emphasis added.) *See, e.g., Christensen*, 658 N.W.2d at 584–85 (explaining that "[i]n construing the scope of coverage created by omnibus clauses, courts have followed one of three rules: (1) the strict or conversion rule; (2) the initial permission rule; or (3) the minor deviation rule" and that Minnesota adopted the initial permission rule). It would seem that confusion arises in this case because Minnesota precedent has established that " 'consent' " under the statute has the same meaning as " 'permission' " as used "in customary omnibus clauses." *See Taylor v. Allstate Ins. Co.*, 176 N.W.2d 266, 270 (Minn. 1970).

¶ 11. Auto-Owners relies on *Avis Rent-A-Car System v. Vang*, 123 F. Supp. 2d 504 (D. Minn. 2000), to support its position.[6] There, the court concluded that MINN. STAT. § 170.54 did not apply to an accident that occurred in Michigan. *Avis*, 123 F. Supp. 2d at 507–08. Notwithstanding, the court went on to consider whether the driver at the time of the accident was

78, where our supreme court held that when it overrules a court of appeals decision on any ground, the entire opinion loses all precedential value, and as such cannot be cited as authority for any point of law, unless the Wisconsin Supreme Court expressly states otherwise. *Id.*, ¶ 42. There does not, however, appear to be an analogous prohibition relating to Minnesota case law.

[6] We note that *Avis Rent-A-Car System v. Vang*, 123 F. Supp.

covered under an insurance policy purchased by the renter of the vehicle. *Id.* at 508. The *Avis* court concluded that the policy language defining the term "authorized driver" excluded the driver from coverage as did the rental agreement language defining who was authorized to drive an Avis rental car. *See id.* at 508–09. The policy language and insurance brochure given to the renter at the time he purchased the additional insurance "expressly preclude[d] the application of the initial permission rule" in the driver's favor. *Id.* at 509 (emphasis omitted). *Avis* is useful to our analysis insofar as it reflects that concluding that § 170.54 is inapplicable does not end our inquiry, as Auto-Owners would have us believe.[7] In all other regards, however, *Avis* is inapposite as it does not involve an omnibus provision similar to the one at issue here.

¶ 12. Instead, this case is akin to *State Farm Mutual Automobile Insurance Co. v. Budget Rent-A-Car Systems, Inc.*, 359 N.W.2d 673 (Minn. Ct. App. 1984), where, after applying the initial permission rule, the court concluded that a driver was afforded coverage under an omnibus clause of an excess policy because he was given permission to drive by the renter of the vehicle, despite a contrary provision in the rental agreement. *Id.* at 676. There, the trial court dismissed the claim for vicarious statutory liability because the acci-

---

2d 504 (D. Minn. 2000), is not binding authority in Minnesota state courts. *See Boatwright v. Budak*, 625 N.W.2d 483, 487 (Minn. Ct. App. 2001).

[7] Auto-Owners asserts:

> Because of [MINN. STAT. § 170.54]'s limited application, the choice of law analysis is entirely moot. Simply looking at the terms of the subject Minnesota law makes it clear that the Minnesota law cannot apply in this case, and further makes it clear that the trial court's decision was in error.

dent occurred outside of Minnesota, leaving only the issue of coverage under the various insurance policies to be resolved on appeal. *Id.* at 675. In making its coverage determination, the court relied on Minnesota's initial permission rule, even though the accident occurred in Texas. *Id.* at 676.

■

¶ 13. Accordingly, while we agree with Auto-Owners that MINN. STAT. § 170.54 applies only to accidents that occur within Minnesota, *see Boatwright v. Budak*, 625 N.W.2d 483, 488 (Minn. Ct. App. 2001), the initial permission rule as applied in the context of an omnibus clause can apply to accidents occurring outside of Minnesota state lines, *see, e.g., State Farm Mut. Auto. Ins. Co.*, 359 N.W.2d at 676.

*B. Choice-of-law analysis.*

■

¶ 14. Having determined that Minnesota's initial permission rule can be applied in the context of an omnibus clause outside of Minnesota state lines, we now need to determine whether Minnesota or Wisconsin law should govern the instant appeal. This presents a question of law subject to our *de novo* review. *See Drinkwater v. American Family Mut. Ins. Co.*, 2006 WI 56, ¶ 14, 290 Wis. 2d 642, 714 N.W.2d 568. To make the determination, we employ a choice-of-law analysis. *See Employers Ins. of Wausau*, 153 Wis. 2d at 309 ("Because there is a genuine conflict of law, a choice of law question is presented."). "The choice[-]of[-]law rules of the forum state, Wisconsin, control this question." *Id.*

¶ 15. Case law reveals that "insurance-related issues which arise as part of a personal injury lawsuit are not always readily categorized as sounding in tort or

contract." *Drinkwater*, 290 Wis. 2d 642, ¶ 36. This is evident here where the parties dispute whether contract or tort choice-of-law analysis applies. Auto-Owners submits that because this case arises out of a Wisconsin motor vehicle accident, tort choice-of-law analysis dictates that Wisconsin law should apply to the facts surrounding the accident, including those related to Lucey's permissive use of the vehicle involved in the accident. In contrast, Enterprise contends that because this appeal arises out of a contract dispute over the interpretation of the term "permission," which is found in the omnibus provision of the Auto-Owners policy, contract choice-of-law analysis is applicable.

¶ 16. Two leading cases discussing choice-of-law analysis are *State Farm Mutual Auto Insurance Co. v. Gillette*, 2002 WI 31, 251 Wis. 2d 561, 641 N.W.2d 662, and *Drinkwater*. Auto-Owners relies on *Drinkwater*, while Enterprise contends that *Gillette* should guide our analysis. We briefly discuss both cases.

¶ 17. *Gillette* arose out of an action brought by Wisconsin residents to recover underinsured motorist benefits for injuries resulting from an accident that occurred in Manitoba, Canada. *Id.*, 251 Wis. 2d 561, ¶ 2. The court applied two separate choice-of-law analyses: At the outset, it employed a contract choice-of-law analysis to determine which jurisdiction's law applied to the contractual dispute, *see id.*, ¶¶ 5, 26–28, and after resolving that issue and construing the policy, it employed a tort choice-of-law analysis to determine which jurisdiction's law controlled the damages the insureds were entitled to recover, *see id.*, ¶¶ 7, 49, 53.

¶ 18. At issue in *Drinkwater* was whether a health plan could enforce its contractual subrogation rights to recover from the proceeds of the plaintiff's tort action. *Id.*, 290 Wis. 2d 642, ¶¶ 37–38. The court acknowledged

that "contract law applies to the interpretation of the [p]lan's insurance contract with [the plaintiff]'s employer," *id.*, ¶ 37, but that because "[the plaintiff]'s right to recover in tort [was] . . . tightly bound to the [p]lan's subrogation right," the tort choice-of-law analysis set forth in *Gillette* applied, *Drinkwater*, 290 Wis. 2d 642, ¶ 39.

¶ 19. The circumstances of this case are unlike those presented in *Drinkwater* and in *Gillette* to the extent that they warranted the application of tort choice-of-law analysis because the injured parties' rights to recover in tort were "tightly bound" to the rights asserted by the health plan and the insurance company, respectively, *see Drinkwater*, 290 Wis. 2d 642, ¶ 39; *see also Gillette*, 251 Wis. 2d 561, ¶ 49. In our case, Kender's right to recover in tort is not tightly bound to Auto-Owners' asserted rights under the policy that it issued to Strom.

¶ 20. At issue is whether Auto-Owners has contractual responsibility, under the terms of the policy it provided to Strom, to insure Lucey. Consequently, we apply the "grouping of contacts" rule to determine whether Minnesota or Wisconsin law applies to this contractual dispute.[8] *See Gillette*, 251 Wis. 2d 561, ¶ 26.

---

[8] We are not persuaded by Auto-Owners' argument that the court's contract choice-of-law test set forth in *State Farm Mutual Auto Insurance Co. v. Gillette*, 2002 WI 31, 251 Wis. 2d 561, 641 N.W.2d 662, is inapplicable because *Gillette* involved a first-party contract claim, whereas this is a third-party claim alleging negligence against Lucey, and as such, is a tort claim. *Thom v. OneBeacon Ins. Co.*, 2007 WI App 123, ¶ 14 n.7, 300 Wis. 2d 607, 731 N.W.2d 657 ("Claims by third parties are tort claims, not contract claims."). While the underlying lawsuit is indeed a third-party claim, the issue involved here relates solely

¶ 21. Pursuant to the " 'grouping of contacts' rule," contract rights are " 'determined by the law of the [jurisdiction] with which the contract has its most significant relationship.' " *Id.* (citations omitted; bracketing in *Gillette*). The contacts to be considered when determining the applicable state law include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." *Utica Mut. Ins. Co. v. Klein & Son, Inc.*, 157 Wis. 2d 552, 557, 460 N.W.2d 763 (Ct. App. 1990).

¶ 22. After considering the relevant contacts under the grouping of contacts rule, we conclude that Minnesota has the more significant relationship with the Auto-Owners policy. The contract was executed and negotiated in Minnesota given that both Strom and its insurance agent are located there. The contract was

to the contract aspects of the insurance policy issued by Auto-Owners. As such, we see no reason to distinguish it from the first-party contract claim at issue in *Gillette. See id.*, 251 Wis. 2d 561, ¶ 25 (explaining that an insurance policy is a contract and "an action on the policy . . . sounds in contract although an underlying tortious injury is involved") (internal quotation marks and citation omitted).

Furthermore, Auto-Owners' representation that this case involves an issue of "substantive law," i.e., "whether Wisconsin or Minnesota law should apply to the facts of the accident," is in error. (Emphasis omitted.) At issue is how to interpret the term "permission" found in the omnibus provision in the Auto-Owners policy. Whether Auto-Owners has a contractual obligation to afford coverage to Lucey, as Enterprise explains, "is an issue ancillary to the underlying tort claim brought against Mr. Lucey."

performed in Minnesota (along with other states). In addition, the place most relevant to the subject matter of the contract is Minnesota as Strom was located there, and, most telling for our purposes, is the fact that the policy incorporated Minnesota-specific endorsements. The parties to the policy were Strom, a Minnesota corporation, and Auto-Owners, a Michigan insurance company. We agree with Enterprise that "it is clear from the parties' inclusion of endorsements specifically adding Minnesota provisions to the insurance contract, that the parties to this contract expected Minnesota law to apply to its interpretation." Consequently, we conclude that the significant contacts in this case strongly favor Minnesota, not Wisconsin. As such, Minnesota law controls our interpretation of the term "permission" as used in the omnibus provision of the Auto-Owners policy.

██

¶ 23. As previously stated, Minnesota utilizes the initial permission rule when determining the scope of coverage created by omnibus clauses. *See Christensen*, 658 N.W.2d at 585. Because Lucey was using the vehicle involved in the accident with Strom's permission, and there is no evidence that he intended to steal or convert the vehicle, Minnesota's initial permission rule obligates Auto-Owners to provide coverage to Lucey. A bifurcation and stay of the proceedings so that a separate trial can be held on the scope of Lucey's permission is unnecessary in light of this conclusion. Accordingly, we affirm.

*By the Court.*—Order affirmed.