COURT OF APPEALS
DECISION
DATED AND FILED

September 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1989**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV253

IN COURT OF APPEALS
DISTRICT IV

---

ADAM KODRA,

    PLAINTIFF-APPELLANT,

DEPARTMENT OF VETERANS AFFAIRS AND ABC INSURANCE COMPANIES,

    INVOLUNTARY PLAINTIFFS,

  V.

HAROLD FREDD, NORTHERN PRECISION RIFLES, USAA CASUALTY
INSURANCE COMPANY AND XYZ INSURANCE COMPANIES,

    DEFENDANTS-RESPONDENTS.

---

       APPEAL from orders of the circuit court for Monroe County:
TODD L. ZIEGLER, Judge. *Affirmed*.

       Before Kloppenburg, Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Adam Kodra sued Harold Fredd, Fredd's business, Northern Precision Rifles, and Fredd's purported homeowner's insurer, USAA Casualty Insurance Company, alleging that Fredd's negligence in customizing Kodra's rifle caused the injuries that Kodra suffered when he subsequently fired the rifle and it exploded.   In this appeal, Kodra challenges two decisions by the circuit court.   In the first decision, the court denied Kodra's motion for default judgment against USAA Casualty, the insurance company initially sued and served by Kodra.   In the second decision, after United Services Automobile Association was substituted as the correct defendant insurance company, the court granted United Services Automobile Association's motion for summary judgment based on the court's conclusion that two exclusions in Fredd's United Services Automobile Association insurance policy apply to bar coverage for Kodra's injuries.

¶2     We conclude that we lack jurisdiction over Kodra's appeal of the first circuit court decision because Kodra failed either to timely seek leave to appeal the non-final order denying his motion for default judgment against USAA Casualty or to timely appeal the subsequent final order substituting United Services Automobile Association as the defendant insurer and thereby dismissing USAA Casualty as a party.   As to the second circuit court decision, we conclude that the undisputed facts establish that United Services Automobile Association is entitled to summary judgment because, given that Fredd was required to and did have a federal license to perform the work of customizing Kodra's rifle, the "professional services" exclusion in Fredd's United Services Automobile

Association insurance policy applies to bar coverage for Kodra's injuries allegedly resulting from that work. Accordingly, we affirm.

## BACKGROUND

¶3 We now briefly summarize proceedings in the circuit court. We will present additional facts as pertinent to our analysis in the discussion section that follows.

¶4 Kodra commenced this action by filing a complaint against Fredd, Northern Precision Rifles as Fredd's business, and USAA Casualty Insurance as Fredd's insurer, seeking damages for injuries that were allegedly caused by Fredd's negligent customization of a rifle belonging to Kodra. Specifically, the complaint alleges as follows:

> in November 2018, [Fredd], doing business as NORTHERN PRECISION was contracted by [Kodra] to modify [Kodra]'s Desert Tech HTI rifle to fire .416 Garrett rounds. [Fredd], on behalf of NORTHERN PRECISION, agreed to modify the weapon, and [Kodra] picked up the completed firearm on March 17, 2019. Upon information and belief, on or about March 18, 2019, [Kodra] fired the rifle for the first time since [Fredd]'s and/or NORTHERN PRECISION'S modification. Immediately upon firing, the barrel of the rifle detached from the firearm and was thrown forward, while the remainder of the rifle flew backward at high speed. The scope portion of the rifle impacted [Kodra]'s skull and caused severe injuries. [Fredd] and/or NORTHERN PRECISION had negligently modified the firearm, causing the weapon to break apart from the force of the gunshot.

¶5 After USAA Casualty was served and failed to file an answer by the statutory deadline, Kodra filed a motion for default judgment against USAA Casualty. USAA Casualty initially responded by filing an answer admitting that it had in effect a homeowner's insurance policy for Fredd; two weeks later it filed an

amended answer denying that it had in effect a homeowner's insurance policy for Fredd and clarifying that United Services Automobile Association issued the homeowner's insurance policy for Fredd in effect at the pertinent time. USAA Casualty also filed a motion for both an order extending the time to file the answer and an order denying Kodra's default judgment motion based on the relief from judgment statute, WIS. STAT. § 806.07 (2019-20).[1] After a hearing and supplemental briefing, the circuit court issued an order dated April 13, 2020, denying Kodra's motion for default judgment against USAA Casualty and accepting USAA Casualty's answer and amended answer pursuant to § 806.07(1)(h).

¶6 On June 26, 2020, upon the parties' stipulation, the circuit court entered an order bifurcating insurance coverage issues, staying discovery on liability and damages, and providing that United States Automobile Association "shall be substituted in the place of USAA Casualty Insurance Company and that no further pleadings shall be required of any of the parties."

¶7 After the parties engaged in discovery, United States Automobile Association filed a motion for summary judgment on the basis that Fredd's United States Automobile Association homeowner's insurance policy in effect at the pertinent time bars coverage for Kodra's injuries under the policy's "professional services" and "business" exclusions. The circuit court issued an oral ruling concluding that both exclusions apply to bar coverage and issued an order dated October 12, 2020, granting United States Automobile Association's motion.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶8     On December 2, 2020, Kodra filed his Notice of Appeal specifically of the circuit court's April 13, 2020 order denying his motion for default judgment against USAA Casualty and of the court's October 12, 2020 order granting United Services Automobile Association's motion for summary judgment.

## DISCUSSION

¶9     Kodra argues that the circuit court erred when it denied Kodra's motion for default judgment against USAA Casualty and accepted USAA Casualty's late-filed answer and amended answer pursuant to WIS. STAT. § 806.07(1)(h).  Kodra also argues that the circuit court erred when it granted United Services Automobile Association's motion for summary judgment based on the court's determination that Fredd's United Services Automobile Association insurance policy bars coverage for Kodra's injuries under the "professional services" and "business" exclusions.  We address Kodra's challenges related to each decision in turn.

### I. Kodra's Motion for Default Judgment Against USAA Casualty

¶10    To repeat, Kodra challenges the circuit court's order denying Kodra's motion for default judgment against USAA Casualty and accepting USAA Casualty's answer and amended answer pursuant to WIS. STAT. § 806.07(1)(h).  We will sometimes refer to this order as the "default judgment order."

¶11    After the parties completed their appellate briefing addressing the merits of Kodra's challenge to the circuit court's default judgment order, this court ordered the parties to file supplemental letter briefs addressing whether we have jurisdiction over Kodra's appeal of that order.  As we now explain, we conclude

that we lack jurisdiction over Kodra's appeal of the circuit court's default judgment order as to USAA Casualty because Kodra neither timely sought leave to appeal the non-final default judgment order nor timely appealed the subsequent final order dismissing USAA Casualty as a party.

¶12    Whether we have jurisdiction to consider an appeal is a question of law that we review de novo. *See **Nickel v. United States**,* 2012 WI 22, ¶20, 339 Wis. 2d 48, 810 N.W.2d 450. We have jurisdiction when we grant a timely filed petition for leave to appeal a non-final order under WIS. STAT. § 808.03(2) and WIS. STAT. RULE 809.50(1) and (3), or when a party has timely filed notice of appeal of a final judgment or order under WIS. STAT. Rule 809.10(1)(e).

¶13    A party may petition for leave to appeal a non-final judgment or order in advance of a final judgment or order. WIS. STAT. § 808.03(2). The party must file the petition within 14 days after the entry of the judgment or order. WIS. STAT. RULE 809.50(1).

¶14    A party in a civil case must generally file an appeal of "a final judgment or order" no later than ninety days after the date that the circuit court enters the order. WIS. STAT. §§ 808.04(1); 808.03(1). A judgment or order is final when it "disposes of the entire matter in litigation as to one or more of the parties." Sec. 808.03(1). "An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent … not previously appealed and ruled upon." WIS. STAT. RULE 809.10(4).

¶15    With these principles in mind, we briefly recap the pertinent procedural history of the case. USAA Casualty was named in the complaint as the defendant insurance company that issued Fredd's homeowner's insurance policy

in effect at the pertinent time. On April 13, 2020, the circuit court issued an order denying Kodra's motion for default judgment against USAA Casualty. That order preserved USAA Casualty as a defendant in this action and, therefore, was a non-final order as to USAA Casualty. Kodra has not petitioned for leave to appeal that order.

¶16    On June 26, 2020, the circuit court issued an order, upon the parties' stipulation and without requiring additional pleading, that substituted United Services Automobile Association for USAA Casualty as the defendant insurer. Thus, Kodra received in that order the benefit of bringing the correct insurer into the case as a defendant without filing and serving the correct insurer with a summons and complaint. As of June 26, 2020, USAA Casualty was no longer a party, and there remained nothing to litigate as to USAA Casualty; instead, all subsequent litigation including the summary judgment litigation discussed in the next section was between Kodra and United Services Automobile Association. In other words, June 26, 2020, was the last date that USAA Casualty was a defendant in this action and was, therefore, the date that USAA Casualty was dismissed. Thus, the June 26, 2020 order was a final order as to USAA Casualty and only by timely appealing that order could Kodra bring before this court the prior non-final default judgment order as to USAA Casualty. *See* WIS. STAT. RULE 809.10(4). Kodra filed his notice of appeal on December 2, 2020.

¶17    Kodra's notice of appeal was filed 233 days after the circuit court issued the April 13, 2020 order denying Kodra's motion for a default judgment against USAA Casualty default judgment, well beyond the 14-day time for seeking leave to appeal the non-final order expired. Under the provisions set forth above, in the absence of a timely filed petition for leave to appeal the non-final default judgment order, Kodra was required to timely appeal the final June 26,

2020 order by which USAA Casualty was dismissed as a party in order to bring before this court an appeal of the prior non-final default judgment order favorable to USAA Casualty. However, the notice of appeal was filed 159 days after USAA Casualty was no longer a party by virtue of the June 26, 2020 order, well beyond the 90-day time for appealing a final order expired. Thus, Kodra neither timely petitioned for leave to appeal the non-final default judgment order favorable to USAA Casualty nor timely appealed the final order dismissing USAA Casualty.

¶18    In sum, we conclude that we lack jurisdiction over Kodra's appeal of the non-final default judgment order favorable to USAA Casualty because Kodra neither timely petitioned for leave to appeal that order nor timely appealed the final substitution order that dismissed USAA Casualty from this action.

¶19    Kodra does not dispute that the April 13, 2020 default judgment order is a non-final order, or that the June 26, 2020 substitution order is a final order. Rather, Kodra appears to argue that he was not required to timely appeal the June 26, 2020 substitution order to preserve his appeal of the prior default judgment order because at the time of the June 26 order he "still had a USAA insurance entity as a defendant in the case" and "the most logical point" for him to seek appellate review of the default judgment order was when "there ceased to be an insurance entity remaining in the case as a defendant, which occurred when summary judgment was entered in favor of [United Services Automobile Association]." Kodra asserts that both insures are "sister entities" and "part of a larger whole" with the "same principal place of business, the same registered agent, and the same staff receiving and processing pleadings." We do not consider this argument because Kodra cites to nothing in the record establishing the factual or legal details of a relationship, if any, between USAA Casualty and United Services Automobile Association, nor to any legal authority that explains the

significance of any such relationship under the rules of appellate jurisdiction set forth above. *See* ***State v. McMorris***, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals "may choose not to consider arguments unsupported by references to legal authority … and arguments that lack proper citations to the record").

¶20      Kodra suggests that it is not fair to deprive him of the opportunity to challenge the default judgment order in this appeal because, he asserts, the identity of the proper insurer was not made clear to him before USAA Casualty filed its amended answer and USAA Casualty "acted as though it were the proper entity" before and during litigation. Regardless of why Kodra sued the wrong insurer, Kodra does not cite any evidence in the record supporting his factual assertions nor any legal authority addressing fairness in the context of the rules of appellate jurisdiction. Therefore, we do not consider further whatever fairness argument he seeks to make.

¶21      Kodra also argues that the default judgment issues he raises are likely to arise again but evade review and should be resolved by this court to avoid uncertainty. However, Kodra does not cite any legal authority connecting these considerations to the question of whether his appeal is timely so as to invoke our jurisdiction, and we reject this argument on that basis. *See* ***Industrial Risk Insurers v. American Eng'r Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (internal citation omitted)).

¶22      Essentially, Kodra seeks to circumvent the final-order rule by piggybacking his untimely appeal of a non-final order as to USAA Casualty on a

timely appeal of a final order as to United States Automobile Association.  As we have explained above, he may not.[2]

## II.  United States Automobile Association's Motion for Summary Judgment

¶23    Kodra argues that United States Automobile Association is not entitled to summary judgment because the business and professional services exclusions in Fredd's United States Automobile Association insurance policy do not apply to bar coverage for Kodra's injuries allegedly resulting from Fredd's customization of Kodra's rifle.  We first state the applicable standard of review governing a motion for summary judgment and the general legal principles governing interpretation of insurance policies.  We then provide additional background on the motion for summary judgment.  Finally, we explain why we conclude that United States Automobile Association is entitled to summary judgment and why Kodra's arguments to the contrary fail.

### A.  Standard of Review and General Legal Principles

¶24    We review summary judgment de novo, construing the facts and reasonable inferences from those facts in the nonmoving party's favor.  *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶32, 237 Wis. 2d 19, 614 N.W.2d 443.  Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).

---

[2] We note that, had Kodra timely appealed so as to bring before this court the circuit court's order denying his motion for default judgment against USAA Casualty, it is likely that we would have affirmed that order.

¶25     Here, our review of the circuit court's summary judgment decision requires us to interpret and apply insurance policy provisions. As a threshold matter, we note that, although Fredd's insurance policy was issued in Indiana, the parties do not dispute the circuit court's determination that there is no conflict of law between Indiana and Wisconsin in this case. *See* ***Kender v. Auto-Owners-Ins. Co.***, 2010 WI App 121, ¶14, 329 Wis. 2d 378, 793 N.W.2d 88 (courts perform a choice-of-law analysis when "there is a genuine conflict of law"). On appeal, Kodra cites exclusively to Wisconsin law and United States Automobile Association asserts that "Wisconsin and Indiana law are identical" as they apply in this case. Therefore, we rely on Wisconsin law. *See* ***Grigg v. Aarrowcast, Inc***., 2018 WI App 17, ¶22, 380 Wis. 2d 464, 909 N.W.2d 183, *review granted*, 2018 WI 92, 383 Wis. 2d 623, 918 N.W.2d 431 (when parties do not substantiate a genuine conflict of law, this court assumes Wisconsin law applies).

¶26     The interpretation of an insurance policy is a question of law that we review de novo. ***Danbeck v. American Family Mut. Ins. Co.***, 2001 WI 91, ¶10, 245 Wis. 2d 186, 629 N.W.2d 150. "An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it." ***Id.*** Therefore, we give the words in an insurance policy their common and ordinary meaning, and where the policy language is plain and unambiguous, we enforce it as written without resorting to rules of construction. ***Id.***

## B. Additional Pertinent Background

¶27 The following facts, taken largely from Fredd's deposition and his United States Automobile Association insurance policy, are undisputed for purposes of summary judgment.

¶28 Fredd's United States Automobile Association insurance policy in effect at the pertinent time is a homeowner's policy that provides personal liability coverage for claims for damages caused by an occurrence to which the coverage applies. The policy excludes coverage for claims for damages "[a]rising out of the rendering or failure to render 'professional services'" (referred to as the "professional services exclusion").[3]

¶29 The policy defines "professional services" as:

> any type of service to the public that requires members[4] rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the services and includes, but is not limited to services rendered by dentists, naturopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists, podiatrists, optometrists, nurses, nurse-midwives, veterinarians, pharmacists, architects, landscape architects, engineers, accountants, land surveyors, psychologists, attorneys-at-law, therapists, counselors and social workers.

---

[3] The policy also excludes coverage for claims for damages "[a]rising out of or in connection with a 'business' engaged in by any 'insured'" (referred to as the "business exclusion"). Because our conclusion as to the application of the professional services exclusion disposes of this appeal, we do not describe or address the application of the business exclusion. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

[4] As defined by the policy, "'Member' means the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership number is shown in the Declarations of this policy."

12

¶30    Fredd has held a Federal Firearms License since 1985.  He obtained a Federal Firearms License because "[a]nybody that sells guns or builds guns or has anything to do with guns on a regular basis, commercially, if you will" needs that license.    He has operated his own gunsmithing business since 2002. "[Fredd's] Federal Firearms License remains the same" regardless of changes in the name of his business.  He has held the license in the name of his current business, Northern Precision Rifles, LLC, since December 2015 and he is also personally named on the license.

¶31    Fredd has worked full-time for Northern Precision Rifles since 2015. For each gun that he works on, Fredd buys parts, installs the barrel, chambers it for a specific caliber, and does all the finish work.

¶32    Sometime after 2015, Kodra arranged for Fredd to customize Kodra's Desert Tech rifle.  Fredd customized Kodra's Desert Tech rifle by re-chambering it to a larger caliber so that it could accept larger cartridges for extreme long-range distance shooting.  To achieve this, Fredd "had to recut the chamber," altering the inside of the rifle's barrel. Although Fredd would normally collect $500.00 in fees for such a customization, he waived his customary fees for the performance of this work on Kodra's rifle. Kodra picked up the customized rifle from Fredd in March 2019.

¶33    Kodra's injuries for which he seeks damages allegedly resulted from his firing the customized rifle shortly after Fredd completed the customization.

*C. Analysis*

¶34    We conclude that Fredd's United States Automobile Association insurance policy's professional services exclusion applies to preclude coverage for

any damages resulting from Fredd's customization of Kodra's rifle. The exclusion unambiguously bars coverage for damages arising from the rendering of services for which a license is required and the undisputed facts show that Fredd performed the customization in the course of providing gunsmithing services for which he was required to and did obtain a Federal Firearms License.

¶35      Kodra does not dispute that Fredd has a Federal Firearms License or that the work that Fredd performed on Kodra's rifle is gunsmithing. Rather, he argues that the professional services exclusion does not bar coverage notwithstanding Fredd's license. Specifically, Kodra makes the following three, apparently alternative, arguments: (1) the exclusion does not apply to licenses for non-white collar occupations such as gunsmithing; (2) the exclusion does not apply because the license that Fredd obtained is required only for buying or selling or distributing firearms, not for gunsmithing; and (3) if the exclusion does apply to licenses for gunsmithing, it does not apply here because Fredd did not need a license for his work on Kodra's rifle that he performed at no charge. We first summarize the authority pertaining to the license at issue and then address and reject each argument in turn.

¶36      As stated, the license at issue is a Federal Firearms License. Under 18 U.S.C. § 923(a), a person who manufactures or deals in firearms must obtain a Federal Firearms License: "No person shall engage in the business of … manufacturing, or dealing in firearms … until he [or she] has filed an application with and received a license to do so from the Attorney General." 18 U.S.C. 923(a)

(2018).[5]  Pertinent here, each person shall pay a fee when applying for the license and a fee when renewing the license every three years.  ***Id.***

¶37    Also pertinent here, a "dealer" in firearms is "any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms."  18 U.S.C. § 921(a)(11).  The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) interprets 18 U.S.C. § 921 to require a Federal Firearms License for a person engaged in "the business of engraving, customizing, refinishing or repairing firearms" because such a person would be "considered to be a gunsmith within the definition of a dealer."  *See Is a license needed to engage in the business of engraving, customizing, refinishing or repairing firearms?*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES (July 13, 2020), https://www.atf.gov/firearms/qa/license-needed-engage-business-engraving-customizing-refinishing-or-repairing-firearms (last visited June 21, 2021).

¶38    First, Kodra argues that the gunsmithing in which Kodra is engaged is not a "professional service" because the examples of professional services contained in the policy's exclusion are "qualitatively different" from gunsmithing.  He argues that the examples of professional services are uniformly white-collar professions that require advanced degrees and continuing education, and that gunsmithing is a craft that has no such requirements.  This argument fails because it ignores the plain language of the exclusion in several respects.  The exclusion provides that "'[p]rofessional services'" means "*any type* of service to the public that requires members rendering a service to obtain an advanced degree and/*or*

---

[5]  All citations to the U.S. Code are to the 2018 version unless otherwise noted.

obtain a license or other legal authorization to provide the services and *includes, but is not limited to ….*" (emphasis added). The use of the phrase "any type" imposes no limitation or qualitative distinction such as that suggested by Kodra beyond the requirement expressly stated: "an advanced degree and/or a license or other legal authorization." The use of "or" indicates that an advanced degree is not required if only a license is required. The use of the phrase "includes, but is not limited to" before the list of examples indicates that the list of examples is non-exhaustive. Kodra points to no language in the exclusion indicating that, where a license is necessary to provide a service, something more is required for the service to be a "professional service."

¶39 As part of this argument, Kodra also suggests that the license for gunsmithing is somehow not a license within the meaning of the exclusion because the license requires neither specialized training nor continuing education, and "essentially renews automatically every three years when payment is submitted." However, Kodra does not point to any language in the exclusion distinguishing among licenses based on the requirements for obtaining and maintaining the license.

¶40 Second, and apparently in the alternative, if the policy exclusion does not distinguish among licenses in its definition of professional services, Kodra argues that the exclusion does not apply because Fredd's Federal Firearms License is required only for buying or selling or distributing firearms, not for the gunsmithing service that Fredd provided here. Kodra supports this argument by citing to an ATF guidance document entitled *Do I Need a License to Buy and Sell Firearms?*, ATF Publication 5310.2 (Jan. 2016). However, Kodra ignores the limited reach of that document and the existence of a different document, cited above at ¶37, which confirms that Fredd's Federal Firearms License is needed for

16

his gunsmithing. The document cited by Kodra addresses only buying and selling. The ATF guidance document cited above at ¶37 addresses gunsmithing and indicates that a Federal Firearms License is required for someone engaged in the business of gunsmithing. Kodra's failure to address this document in his reply brief, despite United States Automobile Association's reference to it in its response brief, is fatal to his argument. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

¶41 Third, and somewhat inconsistently with his argument that a Federal Firearms License is required only for buying or selling, Kodra argues that Fredd was not required to obtain a license to customize Kodra's rifle because a Federal Firearms License is required only for the *business* of gunsmithing and Fredd did not charge Kodra for his gunsmithing work on Kodra's rifle. However, Kodra does not explain how the gunsmithing work that Fredd did on Kodra's rifle is different from Fredd's gunsmithing work doing business as Northern Precision Rifles. That Fredd elected to waive his normal fees for customizing Kodra's rifle, which Fredd testified would have been about $500.00, has no bearing on whether the professional services exclusion based on a license requirement applies. The professional service that Fredd provided was gunsmithing, for which, because he was in the business of gunsmithing, he was required to have a Federal Firearms License. In other words, Fredd was required to obtain a Federal Firearms License for his gunsmithing business and Fredd was engaged in that business when he performed the work for Kodra, regardless of whether or not he charged Kodra for the work. Just as a practicing physician who treats a patient at no charge would still be rendering a professional service because the physician requires a license to

practice, so too an operator of a gunsmithing business who customizes a gun at no charge is still rendering a professional service because the gunsmith requires a license to operate his gunsmithing business.

¶42 In sum, we conclude that Kodra fails to show that United Services Automobile Association is not entitled to summary judgment under Fredd's insurance policy's professional services exclusion.

## CONCLUSION

¶43 For all the reasons explained, we affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.